UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RASHEEM S. HARRIS,

          Petitioner,

    -vs-

THOMAS POOLE,

          Respondent.
_____

**DECISION AND ORDER**
**No. 06-CV-0122T**

## I.   Introduction

*Pro se* petitioner Rasheem Harris ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered February 14, 2001, in New York State, County Court, Ontario County, convicting him, after a jury trial, of two counts of Robbery in the First Degree (N.Y. Penal Law ("Penal Law") § 160.15[2], [4]) and one count of Assault in the First Degree (Penal Law § 120.10[4]).

For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

On the evening of May 24, 2000, Petitioner, Sincere Homes, Bryon Russ ("Russ"), Rasheen Madison ("Madison), and T'Jay Dessassure ("Dessassure") met up at a bar in Geneva, New York. Trial Transcript [T.T.] 61, 117.  At some point thereafter, the five men left Geneva in a tan Dodge minivan driven by Russ.  The five individuals were headed to Rochester.  T.T. 64-65.  As they

were headed out of Geneva, Russ stopped the car on a back road. T.T. 67-69, 123. Russ pulled out a .25 caliber handgun and pointed it at Homes. T.T. 69, 117, 124. As he did so, Russ indicated to Homes that Homes was "0-32"[1] because he snitched on Russ's friend. Russ, Petitioner, and Madison robbed Homes and took his jacket, cell phone, and $70 in cash. T.T. 70-72, 86, 125-27. Russ then ordered Homes out of the car and told him to lie on the ground. Believing he was going to be executed, Homes began to scuffle with Petitioner and Madison. T.T. 72-75. Russ then shot at Homes with the .25 caliber handgun, causing a bullet to pass through Petitioner's thumb and ultimately lodging in Homes's leg. T.T. 76, 129. Russ dropped the gun and Homes ran into the woods, bleeding from his leg wound. He managed to run to a nearby house where he called for help and then collapsed in a puddle of blood on the front porch. T.T. 77-78, 128. The house's occupant, Robert Kleman ("Kleman"), called for the police and an ambulance. T.T. 37-39, 79. When the police arrived, Homes told police that he was shot by one of three or four black males in a tan, brown or beige SUV. T.T. 47. That information was broadcast to law enforcement, and moments later, police stopped a vehicle fitting that description. T.T. 160-62. The police removed all four occupants from the vehicle. T.T. 162-63, 176, 182. The police observed a white, bloody towel inside the vehicle, and smelled the odor of marijuana.

---

[1]      This is gang slang for "dead". T.T. 69-71.

T.T. 176, 184.  Petitioner was bleeding from his hand and had a hole in his thumb.  T.T. 167.  The four occupants were then taken to the Geneva Police Department for questioning and the police sought and obtained a search warrant for the vehicle.  T.T. 190-91. Police discovered the following items during the search:  a bloody towel, a .25 caliber handgun and live .25 round, and some of the victim's personal belongings.  T.T. 202-03.

At the police station, after being advised of his <u>Miranda</u> rights, Petitioner twice denied any knowledge or involvement in the shooting.  Petitioner also claimed he had received the injury to his thumb by cutting it on his baby's crib.  T.T. 199-200, 221, 243.  Subsequently, Petitioner gave an oral and written statement to police, wherein he admitted being in the vehicle with Homes and the other men outside of Geneva, and that he was shot in the hand during a scuffle between Russ and Homes.  T.T. 245.

Following his indictment, Petitioner filed a pro se motion seeking to dismiss the indictment on the ground that he was prevented by trial counsel and the prosecutor from testifying before the grand jury.  <u>See</u> Petitioner's Pro Se Motion to Dismiss Indictment of September 9, 2000.  The Ontario County Court denied Petitioner's motion.  <u>See</u> Decision of the Ontario County Court of October 5, 2000.

On October 18, 2000 and November 15, 2000, a two-day suppression hearing was conducted, wherein Petitioner moved to

suppress the items recovered from the van and his statements to police. At the conclusion of the hearing, the Ontario County Court found that Petitioner's statements were made after <u>Miranda</u> warnings were administered and that they were voluntary and admissible. Hearing Minutes [H.M.] 115, 120-22. The court also found that the search warrant was properly issued based on sufficient probable cause, the execution of the warrant was proper, and the items recovered from the vehicle were admissible. H.M. 115-16, 123. The court also concluded that there had been reasonable suspicion to stop the van and that Petitioner, as a passenger, lacked standing to challenge the stop. H.M. 117, 122.

A trial was held in the Ontario County Court on January 22, 2001, which resulted in a hung jury. On January 29, 2001, Petitioner's re-trial commenced, and he was found guilty on all counts of the indictment. Petitioner was adjudicated a second felony offender and was sentenced to three concurrent, determinate terms of nineteen years imprisonment.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on March 21, 2003.[2] <u>People v. Harris</u>, 303 A.D.2d 1026

---

[2] Petitioner appealed on the following five grounds: (1) the trial court failed to question a juror who purportedly had seen Petitioner in shackles; (2) the trial court's <u>Sandoval</u> ruling gave too much leeway to the prosecution; (3) the trial court erred in not directing that voir dire proceedings be transcribed; (4) Petitioner's sentence was harsh and excessive; and (5) the verdict was against the weight of the evidence. <u>See</u> Appellant's Brief.

(4th Dep't. 2003).  Leave to appeal to the New York State Court of Appeals was denied on August 8, 2003.  <u>People v. Harris</u>, 100 N.Y.2d 594 (2003).

On or about October 11, 2003, Petitioner sought to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10.[3]  The motion was denied on state procedural grounds for failure to raise the issue on direct appeal.  <u>See</u> Decision and Order of the Ontario County Court of December 8, 2003.  Petitioner did not seek leave to appeal the denial of the motion to vacate to the Appellate Division, Fourth Department.

On or about October 8, 2004, Petitioner filed a second motion to vacate his conviction pursuant to C.P.L. § 440.10.[4]  The motion was denied on state procedural grounds for failure to raise the issues on direct appeal.  <u>See</u> Decision and Order of the Ontario County Court of December 8, 2004.  Petitioner sought leave to appeal the denial, which was denied.  <u>See</u> Decision of the Appellate Division, Fourth Department of July 8, 2005.

---

[3]    Petitioner sought to vacate his conviction on the grounds that his trial counsel provided constitutionally ineffective assistance of counsel by failing to pursue a defense of diminished capacity based on intoxication and to request a jury charge addressing the intoxication defense.  <u>See</u> Petitioner's Motion to Vacate of October 1, 2003.

[4]    Petitioner sought to vacate his conviction on the following grounds: (1) the trial court improperly failed to order that the voir dire proceedings be transcribed; (2) prosecutorial misconduct; (3) ineffective assistance of trial counsel for waiving the transcription of the voir dire proceedings, failing to object to prosecutor's use of peremptory challenges, failing to request a jury instruction on whether Petitioner's statement to police was voluntary, and failing to object or request a jury instruction after Petitioner was purportedly seen by a juror while wearing shackles.  <u>See</u> Petitioner's Motion to Vacate of December 5, 2004.

On or about July 14, 2005, Petitioner filed a motion for a writ of error coram nobis, which was denied on September 30, 2005. People v. Harris, 21 A.D.3d 1443 (4th Dep't. 2005). The New York Court of Appeals denied leave to appeal on January 30, 2006. People v. Harris, 6 N.Y.3d 776 (2006).

This habeas petition followed.

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the

law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The

presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.,</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

**C. The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724,

729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Petitioner's Claims

### 1. Ineffective Assistance of Pre-Trial and Trial Counsel

Petitioner argues that he was denied his Sixth Amendment right to effective assistance of counsel. In particular, Petitioner

contends that: (1) pre-trial counsel did not arrange for him to testify before the grand jury[5]; (2) trial counsel improperly waived the transcription of voir dire proceedings; (3) trial counsel failed to request curative instructions or an inquiry into whether a juror saw Petitioner in shackles; (4) trial counsel made improper statements on summation; (5) trial counsel improperly made use of Petitioner's statements to police; (6) trial counsel failed to investigate the victim's medical records and the transcript of the 911 call; (7) trial counsel failed to pursue an intoxication defense; and (8) trial counsel deprived Petitioner of his confrontation rights by stipulating to the prosecution's expert witness testimony.    Petition [Pet.] ¶22A, B; Petitioner's Memorandum of Law [Mem.], Point "1".

Claims (2), (3), and (5) are properly exhausted, but are procedurally barred from habeas review because they were previously raised in the state court and denied on state procedural grounds. See C.P.L. § 440.10(2)(c); Grey v. Hoke, 933 F.2d 117 (2d Cir. 1991).  Petitioner's remaining claims, which he failed to properly exhaust in the state courts,[6] are "patently frivolous",[7] and, as

---

[5]    Petitioner contends that this claim is distinct from his ineffective assistance of trial counsel claims, and urges the Court to review it separately as a discrete issue. See Mem. 4.  The claim, however, is unexhausted, and therefore will be addressed and disposed of in the same manner this Court addresses and disposes of Petitioner's other unexhausted ineffective assistance of trial counsel claims.

[6]    Claims (1), (4), (6), and (8) are unexhausted because Petitioner only raised them his coram nobis application, which is generally considered to be an inappropriate forum in New York State to bring ineffective assistance of trial counsel claims.  See Turner v. Artuz, 262 F.3d 118, 123 (the writ of

such, will be denied on the merits notwithstanding Petitioner's failure to exhaust them in the state courts.  See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### a.    Claims (2), (3), and (5) are Procedurally Defaulted

Petitioner raised claims (2), (3), and (5) in his second C.P.L. § 440.10 motion to vacate his judgment of conviction.  The court denied Petitioner's motion pursuant to C.P.L. § 440.10(2)(c), finding that "the issues raised by [Petitioner] appear on the record and could have been raised upon [Petitioner's] direct appeal. [His] unjustified failure to raise those issues on appeal

---

error coram nobis lies for the purpose of seeking to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel); see also Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) ("[A] petitioner cannot show exhaustion unless he has fairly presented to an appropriate state court the same federal constitutional claim that he  now urges upon the federal courts.") (emphases supplied) (internal citations omitted)).  Claim (7), on the other hand, was properly raised in Petitioner's first C.P.L. § 440.10 motion, but is unexhausted because Petitioner failed to seek leave to appeal the Ontario County Court's denial of the motion. Thus, the claim was not fairly presented to the highest state court from which a decision can be had, rendering it unexhausted for federal habeas corpus purposes. See Daye, 696 F.2d at 190 n.3.

[7]      The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted).  Under either of these standards, Petitioner's claims are meritless.

compels denial of the instance motion." Decision and Order of the Ontario County Court of December 8, 2004, 2. The state court's reliance on C.P.L. § 440.10(2)(c) in this instance constitutes an adequate and independent state ground for denial of Petitioner's ineffective assistance of trial counsel claims. See Aparicio, 269 F.3d at 93 (2d Cir. 2001) (state court's denial of ineffective assistance of counsel claim because defendant failed to raise claim on direct appeal is an independent and adequate state ground barring habeas review); see also Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Levine v. Commissioner of Correctional Servs., 44 F.3d 121, 126 (2d Cir. 1995), cert. denied, 520 U.S. 1106 (1997); Arce v. Smith, 889 F.2d 1271, 1272-73 (2d Cir. 1989), cert. denied, 495 U.S. 937 (1990). Consequently, these claims are procedurally defaulted. See Coleman, 501 U.S. at 729.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Petitioner has failed to show cause and prejudice or that this Court's failure to review these claims will result in a miscarriage of justice. Therefore, these claims must be dismissed.

### b. Remaining Claims

Petitioner's remaining ineffective assistance of trial counsel claims -- (1), (4), (6), (7), and (8) -- are unexhausted, but are, in any event, meritless. This Court, therefore, denies each of these remaining claims pursuant to 28 U.S.C. § 2254(b)(2).

### Counsel Prevented Petitioner from Testifying Before Grand Jury

Petitioner argues that trial counsel improperly prevented him from testifying before the grand jury. Pet. ¶22A; Mem. 67-75.

The record, however, reflects that Petitioner filed a pro se motion to dismiss the indictment on the grounds that he was prevented by both his counsel and the prosecutor from testifying before the grand jury. See Petitioner's Pro Se Motion to Dismiss Indictment of September 9, 2000. The Ontario County Court denied this motion because there was no indication that Petitioner or his counsel had timely requested permission to testify before the grand jury. See Decision of the Ontario County Court of October 5, 2000. Petitioner provides no support for his assertion that trial counsel prevented him from testifying, nor has he offered a description of what he would have testified to, or how his testimony would have led to a more favorable outcome. He simply concludes that "his testimony of the facts would have brought forth a totally different outcome along with witnesses." Mem. 71. Thus, Petitioner's claim lacks merit and cannot serve as a basis for habeas relief.

Additionally, this Court notes that claims of deficiencies in

state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989), cert. denied, 538 U.S. 986 (2003).  To the extent Petitioner makes this claim out as such, the claim is not cognizable in this Court.

### Counsel Made an Improper Statement During Summation

Petitioner contends that trial counsel was ineffective during summation when he stated, "[i]f Mr. Dessassure would have said anything different or gotten any closer to whatever went down he would have been sitting here as the defendant."  Pet. ¶22B, 8a; Mem. 76-77.  Petitioner contends that this "egregious and erroneous" statement "impinged on [his] assumption of innocence" and prejudiced his defense.  Pet. ¶22B, 8a; Mem. 67.  Petitioner, however, fails to explain how this seemingly innocuous statement did, in fact, do so.  He appears to be suggesting that counsel's statement placed Petitioner at the scene of the crime and implicated him as the perpetrator, instead of Dessassure.  See Mem. 76-77.  Viewed in the context of counsel's summation, however, the comment appears to have been made for purposes of showing that Dessassure's version of events –- which tended to implicate Petitioner -- was not credible.[8]  In this regard, the statement, if anything, was beneficial to Petitioner.  Thus, this claim is

---

[8]    Trial counsel stated, "[Dessassure] is already in jail for some other stuff.  He is not going to [tell you certain things].  I am submitting to you that under the three accounts you have heard, [Petitioner's] account makes the most sense and is most likely to have happened."  T.T. 273-74.

meritless, and cannot serve as a basis for habeas relief.

### Counsel Failed to Investigate Medical Records/911 Call

Petitioner contends that trial counsel provided ineffective assistance because he failed to investigate Homes's medical records and obtain a transcript of Kleman's 911 tape. Specifically, Petitioner argues that a medical document exists that demonstrates that the bullet had been removed from Homes's leg, and that this fact, in conjunction with other evidence presented at trial, would have cast doubt on the credibility of Homes's testimony. Pet. ¶22B, 8b; Mem. 77-81. Furthermore, Petitioner argues that the 911 tape would have demonstrated that when Homes arrived at Kleman's house after being shot, he did not know who had shot him, and that he had misidentified his assailants by describing a tan SUV headed toward Rochester, instead of a brown minivan headed toward Geneva. Pet. ¶22B, 8b-c.

Petitioner, however, presents nothing to support his claim that counsel did indeed fail to investigate Homes's medical records. Moreover, Homes testified at trial that he was not truthful about who shot him or why when the police arrived at Kleman's house. T.T. 79. Furthermore, throughout the trial, the jury repeatedly heard the getaway vehicle described as various shades of brown and tan and as both an SUV and a minivan. T.T. 159, 165, 168, 171-72, 181, 188, 202-03, 215, 230, 245. Thus, Petitioner's claim fails on the merits, and cannot serve as a basis

for habeas relief.

## Counsel Failed to Pursue an Intoxication Defense

Petitioner argues trial counsel failed to pursue an intoxication defense, which was both a reasonable and sound defense because he was intoxicated and high on the night of the incident. Pet. ¶22B, 8c; Mem. 81-83.

At the outset, this Court notes that intoxication is not a complete defense to a criminal charge, but merely reduces the gravity of the offense by negating an element of the crime charged. People v. Harris, 98 N.Y.2d 452, 474 n.4 (2002). While the requisite level of intoxication "need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent, People v. Kastenhuber, 57 A.D.2d 655 (3d Dep't. 1977), the degree of intoxication that a defendant must demonstrate is quite high. See People v. Monroe, 277 A.D.2d 598 (1st Dep't. 2000) (rejecting contention that counsel should have argued intoxication defense where defendant's conduct in driving vehicle away from scene, his actions upon apprehension, and his ability to recount detailed version of events did not evince incapacitating intoxication).

Here, Petitioner contends that he was under the influence of both drugs and alcohol on the night of the incident, which, according to Petitioner, would have "placed [his] intent to commit [the] offenses in doubt." Pet¶22B, 8c. It is highly unlikely,

however, that the jury would have found this reduced his intent since Petitioner was capable of purposefully robbing Homes, engaging in a struggle to pin him to the ground, and then driving the minivan away from the scene despite having been shot in the hand.  T.T. 131.  Moreover, although there was testimony from Dessassure and Homes that all of the men had been drinking and smoking marijuana on the night of the incident, no testimony was given about the quantity of alcohol Petitioner consumed or the amount of marijuana he smoked.[9]  T.T. 65, 95, 121, 137-40.  Thus, it is unlikely that the evidence would have supported a viable intoxication charge.

Moreover, this Court notes that the cornerstone of Petitioner's defense was that he merely attempted to separate Russ and Homes, was shot in the process of doing so, and that this recollection of events (i.e., Petitioner's recollection) was the most credible.  As such, it behooved Petitioner to downplay his level of intoxication.  To argue that Petitioner was intoxicated at the time of the incident would have required counsel to concede Petitioner's culpability, and, in doing so, likely cast doubt on Petitioner's version of events.  Thus, Petitioner's claim is meritless, and cannot serve as a basis for habeas relief.

---

[9]    Although not corroborated by any evidence at trial, Petitioner contends that he had six or seven shots of Hennessey, two mixed drinks, and smoked three bags of marijuana with four other people on the night of the incident.  Mem. 13-14.

## Counsel Stipulated to Expert Witness Testimony

Petitioner argues that the stipulation trial counsel entered into with the prosecutor regarding the testimony of Robert Stanton, the firearms expert,[10] deprived him of his constitutional right to confront a witness.  Pet. ¶22B, 8d; Mem. 84-90.

Here, Petitioner faults counsel for failing to cross-examine Stanton, but does not indicate how or on what grounds counsel could have challenged Stanton's scientific conclusion –- which was supported by the evidence presented in the case –- had he cross-examined him.  Petitioner merely makes a conclusory assertion that the failure to do so was a "prejudicial error" on the part of counsel.  Pet. ¶22B, 8d.

In addition, Petitioner also suggests that counsel's failure to cross-examine Stanton was characteristic of counsel's overall inability to provide effective assistance throughout the trial. See Mem. 29, 85-90.  The record belies this claim, however, which is replete with instances where trial counsel thoroughly cross-examined the prosecution's other witnesses.  T.T. 43-5, 56-8, 90-112, 136-52, 164-68, 177-79, 188-92, 211-19, 223-27, 236-40, 249-50.  Thus, this claim is meritless, and cannot serve as a basis for habeas relief.

---

[10]     Stanton's stipulated testimony is as follows:  that he had tested the firearm found in the van, and concluded that a bullet fired from that weapon would be capable of going through someone's thumb and into another person's leg.  T.T. 155, 156.

## 2.     Ineffective Assistance of Appellate Counsel

Petitioner alleges he received ineffective assistance of appellate counsel because counsel failed to argue that trial counsel and pre-trial counsel provided ineffective assistance for the reasons stated above. Pet. ¶22C, Mem. 100-111. Petitioner raised this claim in his coram nobis application, which was summarily denied by the Appellate Division, Fourth Department. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

It is well-settled law that a petitioner claiming ineffective assistance of appellate counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668 (1984); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should

not be evaluated in hindsight). Counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90. The Strickland standard of ineffective assistance of counsel applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).

Here, Petitioner alleges that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel for failing to raise the claims/issues discussed under Section "1". This argument fails, however, because all of these claims are meritless, as discussed above. Furthermore, the record reflects that appellate counsel filed a thorough and well-researched brief on appeal in which he raised five claims, three of which were intertwined with Petitioner's underlying ineffective assistance of trial counsel claims. Thus, Petitioner has failed to overcome the presumption that appellate counsel's decision to forego raising the meritless ineffective assistance of counsel argument and instead focus on other stronger arguments falls within the range of reasonable professional assistance. Additionally,

Petitioner has failed to show that had appellate counsel raised the ineffective assistance of counsel claim –- or any alternative claim for that matter –- there is a reasonable probability that the result of Petitioner's appeal would have been different.  See Strickland, 466 U.S. at 694.

Therefore, this Court cannot find that the Appellate Division's rejection of this claim was "contrary to" or an "unreasonable application of" clearly established Supreme Court law.  This claim must be dismissed.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

   **IT IS SO ORDERED.**


                         S/Michael A. Telesca

                         _____
                         HONORABLE MICHAEL A. TELESCA
                         United States District Judge

DATED:    November 9, 2009
          Rochester, New York